IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

U.S. MATERIAL SUPPLY, INC.,

        Plaintiff,

    v.

KOREA EXCHANGE BANK, and KEB
NY FINANCIAL CORP., as
successor in interest to Korea
Exchange Bank New York Branch,

        Defendants.

HON. JEROME B. SIMANDLE

Civil No. 05-2605 (JBS)

**OPINION**

---

APPEARANCES:

Seth N. Broder, Esq.
Scott Marcus, Esq.
MARCUS BRODER AHART P.C.
121 Johnson Road
Turnersville, NJ 08012
    Attorneys for Plaintiff

Hyun Suk Choi, Esq.
James K. Haney, Esq.
WONG FLEMING, P.C.
821 Alexander Road
P.O. Box 3663
Suite 150
Princeton, NJ 08543
    Attorneys for Defendant Korea Exchange Bank

John M. Falzone, Esq.
800 Inman Avenue
Colonia, NJ 07067
    and
Robert J. Ansell, Jr., Esq. (Pro hac vice)
SILVERMAN, PERLSTEIN & ACAMPORA LLP
100 Jericho Quadrangle
Suite 300
Jericho, NY 11753
    Attorneys for Defendant KEB NY Financial, Corp.

**SIMANDLE**, U.S. District Judge:

This dispute arises from a letter of credit transaction between Defendant Korea Exchange Bank and Defense Procurement Agency, Ministry of National Defense of the Republic of Korea ("Republic of Korea"), identifying Plaintiff U.S. Material Supply, Inc., located in New Jersey, as the letter's beneficiary. Defendant KEB NY Financial Corp. and Defendant Korea Exchange Bank have each filed motions to dismiss pursuant to Rule 12(b) of the Federal Rules.  For the reasons now explained, the Court will dismiss the suit against Defendant Korea Exchange Bank for lack of personal jurisdiction, and deny the motion to dismiss by Defendant KEB NY Financial Corp.

## I.   BACKGROUND

Plaintiff U.S. Material Supply, Inc., is a corporation organized and existing under the laws of the State of New Jersey. According to the Second Amended Complaint, Plaintiff and the Republic of Korea entered into a purchase and shipment agreement for certain goods to be provided by Plaintiff.  On or about September 3, 2003, Korea Bank issued a letter of credit to the Republic of Korea, to cover the contract price of $338,162.40. The letter of credit named Plaintiff as beneficiary and Korea Exchange Bank Business Division as the drawee.

The letter of credit additionally conditioned payment by "any bank" upon presentation of sight draft.  Specifically, the

letter of credit required the beneficiary to present the following documents upon draft: (1) three original and two copies of the bill of lading consigned to "the Defense Transportation CMD, Republic of Korea" and marked "Freight Collect" which are issued by carrier; (2) one original and four copies of a commercial invoice; and (3) one original and four copies of the detailed packing list.  (Sec. Am. Compl. Ex. A.)

On or about April 8, 2005, Plaintiff allegedly mailed from New Jersey the letter of credit and appropriate documentation to Defendant KEB NY Financial Corp. in New York City.[1] The invoice submitted by Plaintiff requested payment in the amount of $312,000.00.  According to Defendant Korea Exchange Bank, KEB NY Financial Corp. then forwarded all relevant documents by mail to Korea Exchange Bank in South Korea.

Payment was never made to Plaintiff by Korea Exchange Bank, however, as Plaintiff apparently did not present the proper documents.  (Def. KEB NY Financial Corp. Ex. C.)  Plaintiff subsequently mailed a letter dated April 27, 2005 to Defendant KEB NY Financial Corp. in New York City demanding payment on the letter of credit.

---

[1] Plaintiff filed this action against Defendant KEB NY Financial Corp. as the successor in interest to the New York Branch of Korea Exchange Bank.  According to its website, Korea Exchange Bank sold the New York branch's assets and liabilities to Defendant KEB NY Financial Corp. in 2004, subsequent to the letter of credit transaction.  The website identifies KEB NY Financial Corp. as its wholly-owned affiliate branch.  See http://www.keb.co.kr/IBS/english/inside/profile/group/group11.jsp

On May 19, 2005, Plaintiff filed a Complaint against
Defendant Korea Exchange Bank asserting breach of contract and
letter of credit claims.  On June 16, 2005, Plaintiff filed an
Amended Complaint adding KEB NY Financial Corp. as a defendant.
On August 4, 2005, Plaintiff filed the Second Amended Complaint
against Defendant Korea Exchange Bank and Defendant KEB NY
Financial Corp, as successor in interest to the New York Branch
of Korea Exchange Bank.  Count I includes a claim for breach of
contract against Defendant Korea Exchange Bank; Count II is a
"letter of credit claim" against Defendant Korea Exchange Bank;
Count III asserts a "successor liability claim" against Defendant
KEB NY Financial Corp.

**II.  DISCUSSION**

    A.   Motion to Dismiss Count III by Defendant KEB NY
        Financial Corp.

Defendant KEB NY Financial Corp. has moved to dismiss Count
III under Rule 12(b)(6), Fed. R. Civ. P., arguing primarily that
KEB NY Financial Corp. is an "advising bank" and, thus, cannot be
liable to Plaintiff.[2]

    1.   Letters of Credit Generally

A letter of credit is "a promise by the 'issuer' (commonly a
bank) to the 'beneficiary' (usually a seller of goods) to extend

---

[2] Defendant KEB NY Financial Corp. additionally argues that
the nonpayment to Plaintiff was a result of Plaintiff's failure
to present the proper documents.  This is a question of fact that
would not be appropriate to examine at this juncture.

credit on behalf of the beneficiary's customer (usually a buyer of goods)." Leonard A. Feinberg, Inc. v. Central Asia Capital Corp., 974 F. Supp. 822, 829 (E.D.Pa. 1997) (quoting Wood v. R.R. Donnelley & Sons Co., 888 F.2d 313, 317 (3d Cir. 1989) (citation omitted)). "The essential function of this device is to assure a party to an agreement that he will receive the benefits of his performance." Wood, 888 F.2d at 317 (citation omitted). "When the seller is unfamiliar with the creditworthiness of the buyer, the bank issues a letter of credit and 'substitutes its credit for that of the customer,' thereby assuring the seller of receiving payment." Central Asia Capital Corp., 974 F. Supp. at 829 (quoting Leney v. Plum Grove Bank, 670 F.2d 878, 881 (10th Cir. 1982)).

In the ordinary letter of credit transaction, there are typically three distinct agreements:

> the underlying contract between the customer and the beneficiary which gave rise to their resort to the letter of credit mechanism to arrange payment; the contract between the bank and its customer regarding the issuance of the letter and reimbursement of the bank upon its honoring a demand for payment; and the letter of credit itself, obligating the bank to pay the beneficiary.

Sound of Market Street, Inc. v. Continental Bank Int'l, 819 F.2d 384, 388 (3d Cir. 1987) (quoting Insurance Co. of North America v. Heritage Bank, N.A., 595 F.2d 171, 173 (3d Cir. 1979)). "The issuing bank's obligation created by the letter of credit is

totally independent of the other contracts." <u>Sounds of Market Street, Inc.</u>, 819 F.2d at 388.

              2.   <u>Advising and Confirming Banks</u>

      "Where the issuing bank and the beneficiary have no prior relationship, another bank may be asked to advise the letter of credit." <u>Id.</u>  The bank that gives notification of the issuance of a credit by another bank is called an "advising bank." <u>Id.</u> Under N.J.S.A. 12A-5-102(a)(1), an "adviser" is "a person who, at the request of the issuer, a confirmer, or another adviser, notifies or requests another adviser to notify the beneficiary that a letter of credit has been issued, confirmed, or amended."

    The "advising bank" is "the agent of the issuing bank for which it performs the service of advising the letter of credit. Thus, when a letter of credit is advised to the beneficiary by an advising bank, there is a fourth agreement involved in the letter of credit transaction – an agreement between the issuing bank and the advising bank." <u>Sounds of Market Street, Inc.</u>, 819 F.2d at 388-89.

> An advising bank . . . assumes no, or very limited responsibilities under the letter of credit arrangement.  It is considered a neutral party, important in forging some connection between the issuing bank and the beneficiary, parties which generally have no prior link.  The advising bank is confined to transmitting information and authenticating the information transmitted, and therefore assumes no liability to the party addressed, except liability for accurate transmission.

Id. (quoting Merchants Bank of New York v. Credit Suisse Bank, 585 F. Supp. 304, 308 (S.D.N.Y. 1984)).

        The role of the advising bank is typically "incidental" to the letter of credit transaction.  Central Asia Capital Corp., 974 F. Supp. at 831.  "[T]he adviser facilitates the establishment of the credit by permitting the seller to rely on the advice as evidence that the issuer has indeed undertaken to honor the seller's draft."  Id. at 832 (quoting John F. Dolan, the Correspondent Bank in the Letter of Credit Transaction, 109 Banking L.J. 396, 404 (1993)); Merchants Bank of New York v. Credit Suisse Bank, 585 F. Supp. 304, 308 (S.D.N.Y. 1984) ("[T]he advising bank is confined to transmitting information and authenticating the information transmitted.")  By definition, the advising bank typically does not assume the same obligations as the issuing bank – i.e. to honor the letter of credit.  Central Asia Capital Corp., 974 F. Supp. at 832.

    A bank acting as an advising bank may become directly obligated on an existing letter of credit if it also acts as a "confirming bank."  A "confirmer" is "a nominated person who undertakes, at the request or with the consent of the issuer, to honor a presentation under a letter of credit issued by another."[3] N.J.S.A. 12A:5-102(a)(4).  "A confirmer is directly

_____

        [3] Pursuant to subsection (a)(11), a "nominated person" is "a person whom the issuer (a) designates or authorizes to pay, accept, negotiate, or otherwise give value under a letter of

7

obligated on a letter of credit and has the rights and obligations of an issuer to the extent of its confirmation. N.J.S.A. 12A5-107(a).  A confirming bank "engages either that it will itself honor a credit already issued by another bank or that such a credit will be honored by the issuer or a third bank." <u>Id.</u> (quoting Article 5 § 5103(a)).

     3.   <u>Rule 12(b)(6) Dismissal Motion</u>

Defendant KEB NY Financial Corp.'s Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted must be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974).  A district court must accept any and all reasonable inferences derived from those facts stated in the complaint. <u>Unger v. Nat'l Residents Corp. v. Exxon Co., U.S.A.</u>, 761 F. Supp. 1100, 1107 (D.N.J. 1991); <u>Gutman v. Howard Sav. Bank</u>, 748 F. Supp. 254, 260 (D.N.J. 1990).  Further, the court must view all allegations in the complaint in the light most favorable to the plaintiff.  <u>See</u> <u>Scheuer</u>, 416 U.S. at 236; <u>Jordan v. Fox, Rothschild, O'Brien & Frankel</u>, 20 F.3d 1250, 1261 (3d Cir. 1994).

---

credit and (b) undertakes by agreement or custom and practice to reimburse."  Obviously, "[s]ince no one can be a confirmer unless that person is a nominated person as defined in Section 5-102(a)(11), those who agree to 'confirm' without the designation or authorization of the issuer are not confirmers under Article 5."  U.C.C. Section 5-102 cmt. 1.

The question before the court is not whether U.S. Material Supply will ultimately prevail; rather, it is whether it can prove any set of facts in support of its claims that would entitle it to relief.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  Therefore, in deciding a motion to dismiss, a court should look to the face of the complaint and decide whether, taking all of the allegations of fact as true and construing them in a light most favorable to the nonmovant, plaintiff's allegations state a legal claim.  Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990).  Only the allegations in the complaint, matters of public record, orders, and exhibits attached to the complaint matter, are taken into consideration.  Chester County Intermediate Unit v. Pennsylvania Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990).

### 4.   Korea Bank Letter of Credit

A letter of credit was issued by Defendant Korea Bank to Defense Procurement Agency Ministry of National Defense, Republic of Korea, in the amount of $338,162.40, naming Plaintiff U.S. Material Supply, Inc. as the beneficiary.  By letter dated April 8, 2005, Plaintiff sought to draft upon the letter of credit from Defendant KEB NY Financial Corp.  KEB NY Financial Corp. now seeks dismissal of Count III of the Second Amended Complaint, arguing that it was acting as an advising bank and, as such, cannot be held liable.

The threshold question in determining whether KEB NY Financial should be shielded from this lawsuit to enforce obligations performable under the letter of credit issued by Korea Exchange Bank, is whether the two banks are separate entities. RSB Mfg. Corp. v. Bank of Baroda, 15 B.R. 650 (S.D.N.Y. 1981). Defendant KEB NY Financial asserts that as a branch of Defendant Korea Bank, the two banks should be treated separately. Plaintiff, on the other hand, argues that "the branch was wholly owned by Korea Exchange Bank and the two should be treated as one in the same." (Pl. Opp. Br. at 3.) As this factual determination is inappropriate on a motion to dismiss, however, the Court must deny Defendant's motion. Id.

Defendant KEB Financial Corp. relies on RSB Mfg. Corp. v. Bank of Baroda, 15 B.R. at 654, for the additional proposition that an "advising and paying bank does not assume any liability to the beneficiary [of a letter of credit] (other than liability for the accuracy of the advising communication)." Though the Court accepts that well-settled legal proposition, the issue in RSB Mfg. Corp. v. Bank of Baroda was not, as it is here, the liability of an advising bank. Instead, the determinative issue in that bankruptcy appeal was the place of performance of the letters of credit.[4] That question, however, did not require the

_____

[4] More specifically, in that case the beneficiary of the letter of credit filed for bankruptcy and then sought payment on a letter of credit issued by a foreign bank. The issuing bank

court to examine whether the issuing bank and its branch, acting
as the advising bank, were separate entities.  The court
explained, "[w]hile it would be necessary to find the New York
branch a separate corporate entity in order to shield it from
lawsuits to enforce obligations performable at other branches,
such a finding is not necessary to limit the place of performance
of a single branch."  <u>Id.</u>  Indeed, the court explicitly noted
that such a factual determination would be inappropriate on a
motion to dismiss under Rule 12(b)(6).  <u>Id.</u>

The Court here, accepting any and all reasonable inferences
derived from the facts pled, as it must, is not able to conclude
that KEB NY Financial Corp. acted solely as an advising bank in
connection with this letter of credit transaction, or whether, as
the Second Amended Complaint alleges, it is the successor of
Korea Exchange Bank, the issuer of the letter of credit.  That
determination is more properly reserved until after, at the very
least, limited factual discovery has taken place.  For these

---

subsequently moved to dismiss, which required the bankruptcy
court to determine where the letter of credit, established in a
foreign bank and advised by New York banks, was actually
"performed."  The court held that because only the foreign issuer
bank assumed the obligations to pay, performance of the letter of
credit took place there and not, as the beneficiary argued, where
the advising banks were located.  In affirming the bankruptcy
court's decision, the district court noted that "the decision of
the Bankruptcy Court that the New York Branch did not incur
liability as an advising and paying bank did not depend on a
finding or corporate separateness."  <u>Id.</u>

reasons, the Court will deny Defendant KEB NY Financial Corp.'s motion to dismiss.


B.   Motion to Dismiss the Second Amended Complaint by Korea Exchange Bank

_____Defendant Korea Exchange Bank has moved to dismiss Counts I and II of the Second Amended Complaint, arguing (1) that personal jurisdiction is lacking; (2) that venue here is improper; (3) forum non conveniens; and (4) failure to join a necessary party. For the following reasons, the Court holds that there is no personal jurisdiction in New Jersey over Defendant Korea Exchange Bank arising from the single letter of credit transaction at issue and, thus, the motion under Rule 12(b)(2) must be granted.[5]

_____1.   Rule 12(b)(2)

Defendant Korea Exchange Bank argues that dismissal is warranted under Rule 12(b)(2), Fed. R. Civ. P., because this Court lacks personal jurisdiction of Korea Exchange Bank. Plaintiff argues that Defendant Korea Exchange Bank had sufficient contacts with New Jersey to establish personal jurisdiction by virtue of the letter of credit transaction.  The

_____

[5] In light of this conclusion, the Court need not address the joinder or venue issues.  Additionally, the Court notes that the doctrine of forum non conveniens "does not come into play unless the court in which the action was brought has both subject matter and personal jurisdiction and is a proper venue."  Charles Alan Wright, R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3828 (2d ed. 1986).

sole contact between Korea Exchange Bank and New Jersey, so far
as this Court is aware, is the naming of the New Jersey company
as the beneficiary of the letter, which was issued in Seoul,
Korea.

The issue presented is whether, without more, the issuance
of a letter of credit by a Korean Bank, in Korea, in favor of a
New Jersey corporation, gives rise to personal jurisdiction over
that Korean bank in a New Jersey court in a suit upon that
letter.  Because the "mere issuance of a letter of credit naming
a resident of a particular state as a beneficiary does not
subject the issuing bank to the jurisdiction of that state,"
Chandler v. Barclays Bank PLC, 898 F.2d 1148, 1151 (6th Cir.
1977), the Court will grant Defendant's motion to dismiss.

The plaintiff bears the burden of demonstrating the facts
that establish personal jurisdiction.  Pinker v. Roche Holdings
Ltd., 292 F.3d 361, 368 (3d Cir. 2002).  "[I]n reviewing a motion
to dismiss under Rule 12(b)(2), [the court] must accept all of
the plaintiff's allegations as true and construe disputed facts
in favor of the plaintiff."  Id. (citations and quotations
omitted).

> [T]o exercise personal jurisdiction over a
> defendant, a federal court sitting in diversity must
> undertake a two-step inquiry.  First, the court must
> apply the relevant state long-arm statute to see if is
> permits the exercise of personal jurisdiction; then,
> the court must apply the precepts of the Due Process
> Clause of the Constitution.  In New Jersey, this
> inquiry is collapsed into a single step because the New

13

Jersey long-arm statute permits the exercise of
personal jurisdiction to the fullest limits of due
process . . . .
        Personal jurisdiction under the Due Process Clause
depends upon the relationship among the defendant, the
forum, and the litigation.  Physical presence within
the forum is not required to establish personal
jurisdiction over a nonresident defendant.  Instead,
the plaintiff must show that the defendant has
purposefully availed itself of the privilege of
conducting activities within the forum State, thus
invoking the benefits and protections of its laws.

IMO Industries, Inc. v. Kiekert AG, 155 F.3d 254, 258-59 (3d Cir.

1998) (internal citations omitted).

        Personal jurisdiction may either be "general" or "specific."

For a court to have "general jurisdiction," the defendant's

contacts with the forum state must be "systematic and

continuous."[6] For a court to exercise "specific jurisdiction"

under the Due Process Clause (1) the defendant must have

constitutionally sufficient "minimum contacts" with the forum;

and (2) the court must determine that exercising jurisdiction

would comport with "traditional notions of fair play and

substantial justice."  Id. at 159 (internal citations omitted).

        In Empire Abrasive Equipment v. H.H. Watson, Inc., 567 F.2d

554 (3d Cir. 1977), the court held "that the district court in

Pennsylvania lacked jurisdiction over a Rhode Island bank that

had issued a letter of credit at the request of a Rhode Island

---

        [6] Plaintiff has not attempted to offer facts establishing
general jurisdiction over Korea Exchange Bank, and the Court
finds no basis for such general jurisdiction.

14

firm in favor of a Pennsylvania company, payable on presentation of drafts in Rhode Island." <u>Dollar Savings Bank v. First Security Bank of Utah</u>, 746 F.2d 208, 213 (3d Cir. 1984) (citing <u>id.</u>).  The court reasoned that "by issuing a letter of credit for a Rhode Island customer, calling for its performance in Rhode Island, the bank can not be said to have subjected itself to the adjudicatory authority of Pennsylvania with respect to its obligations under the letter of credit solely because the beneficiary was a Pennsylvania corporate resident." <u>Empire Abrasive Equipment</u>, 567 F.2d at 558.

To be sure, in <u>Empire Abrasive Equipment</u> the Pennsylvania beneficiary had specifically requested the letter of credit from the Rhode Island bank, on which it could present drafts payable in Rhode Island.  Here, in contrast, Plaintiff did not request that the letter of credit be issued by a bank outside of New Jersey.  Moreover, Plaintiff did not seek payment on presentation of drafts in Korea, where the issuing bank is located.  Those differences are not dispositive, though, as Plaintiff did not make presentation of drafts in New Jersey in any event.  Instead, by letters dated April 8 and April 27, 2005, Plaintiff sought to draft upon the letter of credit in New York.[7]

---

[7]Additionally, it is worth noting that under letter of credit law, the place of issuance of the letter of credit determines the place of its performance.  <u>Chuidian v. Phillipine Nat'l Bank</u>, 976 F.2d 561, 562 (9th Cir. 1992).  Designation of a place of payment under a letter of credit does not alter or

Furthermore, this Court must "examine not only what was allegedly undertaken [by Plaintiff] but also the alternative courses of conduct which were rejected and which might have suggested a different balance of fairness." Empire Abrasive, 567 F.2d at 558.  Here, the New Jersey seller could have asked for a letter of credit from a New Jersey bank.  It did not.  Likewise, the New Jersey company could have asked that the issuer's letter of credit be confirmed by a New Jersey bank.  Again, it did not. Plaintiff could have insisted that any dispute about the letter of credit could be brought in a designated forum, such as New Jersey, but it did not.  In light of Plaintiff's rejection of alternative courses of conduct which were available, the parties' expectations were likely that Korea, or perhaps New York (the locus of Korea Exchange Bank's branch), would be the forum for any dispute arising out of the letter of credit transaction.

Based on the foregoing, the Court concludes that traditional notions of fair play and substantial justice would be offended by hailing Defendant Korea Exchange Bank into this Court merely because it issued a letter of credit with respect to a Korean purchase of goods in favor of a New Jersey corporation.  See

---

amplify that result unless the paying bank also serves as a confirming bank or otherwise acts in a manner indicating that its role with respect to the letter of credit is more than merely mechanical.  RSB Manufacturing Corp. v. Bank of Baroda, 15 Bankr. 650, 654 (S.D.N.Y. 1981).  Here, the place of issuance was Seoul, Korea.

<u>Pacific Reliant Indus., Inc. v. Amerika Somoa Bank</u>, 901 F.2d 735, 738 (9th Cir. 1990) (concluding that the conduct of a foreign bank in issuing a letter of credit did not subject it to suit in the State of residence of the beneficiary and the shipping point for the ordered goods); <u>Southern Plastics Co. v. Southern Commerce Bank</u>, 423 S.E.2d 128 (S.C. 1992) (holding that an out-of-state bank's single act of issuing a letter of credit to a South Carolina beneficiary insufficient to establish personal jurisdiction over the bank). Accordingly, the Court will grant Defendant Korea Exchange Bank's motion to dismiss under Rule 12(b)(2).

## III. CONCLUSION

For the foregoing reasons, the Court will dismiss the suit against Defendant Korea Exchange Bank for lack of personal jurisdiction under Rule 12(b)(2), Fed. R. Civ. P. Additionally, the Court will deny the motion to dismiss under Rule 12(b)(6) by Defendant KEB NY Financial Corp. An appropriate Order will be entered.

<u>February 27, 2006</u>        **s/ Jerome B. Simandle**
Date               Jerome B. Simandle
                    U.S. District Judge

17